UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -x

JUAN OLBA,                                    :

                    Petitioner,      :          **OPINION**

          - against -                :          08 Civ. 7732 (DC)

DAVID M. UNGER,                       :

                    Respondent.      :

- - - - - - - - - - - - - - - - - -x

**APPEARANCES:**     JUAN OLBA
                    Petitioner <u>Pro</u> <u>Se</u>
                    Wyoming Correctional Facility
                    P.O. Box 501
                    Attica, New York   14011

                    ROBERT T. JOHNSON, ESQ.
                    District Attorney, Bronx County, State of New York
                    Attorney for Respondent
                         By:   Jason Whitehead, Esq.
                              Karen Swiger, Esq.
                              Rither Alabre, Esq.
                              Assistant District Attorneys
                    198 East 161st Street
                    Bronx, New York   10451

**CHIN, District Judge**

          <u>Pro</u> <u>se</u> petitioner Juan Olba brings this petition for a
writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Olba was
convicted on October 22, 2003, after a jury trial in the Supreme
Court of the State of New York, Bronx County, of Criminal
Possession of a Controlled Substance in the Third Degree (New
York Penal Law § 220.16(1)).  He was sentenced on July 15, 2004
to an indeterminate term of imprisonment of six-and-one-half to
thirteen years.

Olba contests his conviction on the following grounds: (1) his appellate counsel was ineffective, (2) the police arrested him without probable cause in violation of his Fourth Amendment right to be free from unreasonable searches and seizures, (3) the trial court gave erroneous instructions to the jury on constructive possession and intent, and (4) there was insufficient evidence to prove his guilt beyond a reasonable doubt.  The Court has reviewed the parties' submissions and the record of the proceedings below.  For the reasons that follow, the petition is denied.

**BACKGROUND**

### I.    **The Facts**

The evidence is construed in the light most favorable to the prosecution.

### A.    **The Drug Transaction**

On August 30, 2002, at approximately 2:20 a.m., Olba sold three bags of cocaine in orange ziplock bags to undercover Detective Collin Belle in the lobby of 1872 Monroe Avenue, in the Bronx.  (Tr. 556-62, 535).[1]  Belle, Detective Kenneth Dohan, and a field team were engaged in a narcotics "buy and bust" operation in the area that day.  (Tr. 556).

---

[1]    References to "Tr." are to pages of the trial transcript.

At the tactical meeting the evening before, August 29, 2002, Dohan had given Belle $265 dollars in pre-recorded money to purchase drugs. (Tr. 558-59). At approximately 2:15 a.m. on August 30, 2002, Belle stepped out of his vehicle on the west side of Grand Concourse, near the buy location, and met a man later identified as Eric Bostic.[2] (Tr. 562). Belle asked Bostic "who's working?" (Id.). Bostic replied "[o]ver there." (Id.). Together Belle and Bostic walked over to 1872 Monroe Avenue and met a Hispanic male later identified as Olba. (Id.).

Olba opened the door to the lobby of the apartment complex to let Belle and Bostic in. (Id.). While in the lobby, Belle gave $30 of the pre-recorded buy money to Olba and said, "I need three." (Id.). Olba took the money, opened mailbox 41 with a key, removed three orange ziploc bags of cocaine from the mailbox, and handed the bags to Belle. (Tr. 527-47, 562, 565). During the one-and-one-half to two minute transaction, Belle was standing at arm's length from Olba, focusing on his face and hands. (Tr. 565-66).

Belle then left the location and radioed his field team that a "positive buy" had occurred and gave a description of the

---

[2]     On September 4, 2002, Bostic pled guilty to Criminal Facilitation in the Fourth Degree (Penal Law § 115.00(1)), a class A misdemeanor, and was sentenced to time served. (Resp't Ex. 6).

-3-

parties involved. (Tr. 569). Belle identified Olba as "J D
Black," a Hispanic male with a black shirt and blue jeans. (Tr.
567). Dohan testified that Belle had said that "J D Black" was
wearing a black jacket. (Tr. 394, 397). Belle also told the
field team that "the stash, the drugs is inside mailbox number
41." (Tr. 569).

After hearing the radio transmission, Dohan observed a
man fitting the description given by Belle walking around Tremont
and Monroe Avenues and detained him. (Tr. 393-98, 407-08, 462).
Dohan then held the man on the street until Belle could drive by
to determine whether the man was "J D Black." (Tr. 406-07).
After Belle drove by and confirmed the man was "J D Black," the
man was formally arrested and identified as Olba. (Tr. 571-73).

Dohan searched Olba and found a ring of keys on his
belt. (Tr. 408-09). Dohan gave the ring of keys to Detective
John Conrey, who went to 1872 Monroe Avenue and found that a key
on the ring fit mailbox 41. (Id.). Inside mailbox 41, Conrey
found 40 bags of crack cocaine and approximately $496, $30 of
which was the pre-recorded buy money Belle had used to purchase
the three bags of cocaine. (Tr. 427-47, 499).

## B.  **The Suppression Motion and Evidentiary Hearing**

Prior to trial, Olba requested several pre-trial
hearings and moved to suppress the drugs and money found in the
mailbox. (Resp't Ex. 2). On May 12, 2003, the court denied

Olba's request for a <u>Wade</u> hearing[3] and his motion to suppress for failure to "factually allege that tangible evidence was recovered from [Olba] or from an area in which [Olba] had a legitimate expectation of privacy." (Resp't Ex. 4). The court, however, did grant Olba's request for a <u>Gethers</u> hearing[4] to determine whether Dohan had reasonable suspicion to stop Olba.

On October 9, 2003, the evidentiary/<u>Gethers</u> hearing was held before Justice Newman in New York State Supreme Court, Bronx County. After hearing testimony from Dohan, Justice Newman ruled that there was reasonable suspicion to stop Olba based on the description supplied by Belle, and, once he identified Olba, there was probable cause to arrest Olba. (Hr'g 51-52).[5]

### C.    The Trial

The trial began on October 17, 2003 and ended on October 22, 2003. During the trial, Belle and Dohan gave differing testimony regarding Belle's description of "J D Black," the drug-dealer who was later identified as Olba. Dohan

---

[3]    A <u>Wade</u> hearing is held to determine whether a pre-trial identification of a defendant has an independent basis of reliability and is therefore admissible during trial. <u>United States v. Wade</u>, 338 U.S. 218 (1967).

[4]    A <u>Gethers</u> hearing is held to determine whether the detaining officer had probable cause to detain the suspect to allow the undercover officer to confirm the suspect's identity. <u>People v. Gethers</u>, 86 N.Y.2d 159 (1995).

[5]    References to "Hr'g" are to the evidentiary hearing transcript.

testified that in Belle's radio transmission, he had stated that
"J D Black" was wearing a black jacket.  (Tr. 396-97, 453).
Belle testified, however, that he had said the "[s]econd
individual [J D Black] is male Hispanic with black shirt."  (Tr.
567).  Olba was wearing a black jacket when arrested.  (Tr. 453).

Belle also testified that the lighting conditions in
the lobby on August 30, 2002, were "well lit."  (Tr. 565-66).  A
resident of the building, Lydia Mendoza, however, testified that
on the night of the arrest, the lights in the lobby were off and
there were no lights on in the lobby.  (Tr. 632-33).  Mendoza
also testified that her mailbox was often broken into and that
many of the mailboxes in the lobby were broken and could not be
locked.  (Tr. 631).

D.   **The Jury Instructions**

On October 21, 2003, the trial court instructed the
jury on the elements necessary to convict a defendant of Criminal
Possession of a Controlled Substance in the Third Degree.  The
trial court included instructions on constructive possession and
intent.

With regard to possession, the trial court charged:

A person can exercise dominion or control, can exercise
control over property that is not in their physical
possession.  A person who exercises dominion or control
over property not in their personal physical possession
is said to have something in their constructive
possession.  So there is physical possession, having it

-6-

> on them, and there is this other thing called
> constructive possession.

(Tr. 751).  With regard to intent the trial court charged:

> [Y]ou have to determine if you decide in fact it was
> the defendant what was [sic] intent regarding the drug.
> . . . Intent does not doesn't [sic] require advanced
> planning and it's not necessary that the intent be in a
> person's mind for any particular time.  The intent can
> be formed and need only exist at the very moment the
> person engaged in the prohibited conduct or acts to
> cause the prohibited result.  It doesn't have to exist
> at any time earlier.

(Tr. 753).

### E.   The Verdict

On October 22, 2003, the jury found Olba guilty of
Criminal Possession of a Controlled Substance in the Third
Degree, but acquitted him of Criminal Sale of a Controlled
Substance in the Third Degree.  (Resp't Opp'n 3).

### F.   The Sentence

Olba was sentenced on July 15, 2004 to an indeterminate
term of imprisonment of six-and-one-half to thirteen years.

### G.   Procedural History

#### 1.   Olba's Direct Appeal

Olba's appellate counsel appealed Olba's conviction on
two grounds: (1) the prosecution's evidence was insufficient to
prove Olba guilty beyond a reasonable doubt; and (2) even if Olba
was guilty of Criminal Sale of a Controlled Substance in the

-7-

Third Degree, the sentence was excessive and should be reduced.
(Resp't Ex. 5).

On December 1, 2005, the Appellate Division, First
Department, unanimously affirmed Olba's conviction in a written
decision.  People v. Olba, 24 A.D.3d 105 (1st Dep't 2005).  The
court held that the verdict was based on legally sufficient
evidence because Belle's identification of Olba was reliable and
was corroborated by circumstantial evidence establishing Olba's
constructive possession of the cocaine.  Id.

The New York State Court of Appeals denied Olba's leave
application on January 6, 2006.  People v. Olba, 6 N.Y.3d 779
(2006).

### 2.  Olba's Motion to Vacate the Judgment

On July 13, 2006, Olba moved pro se to vacate the
judgment under New York Criminal Procedure Law ("C.P.L.") §
440.10, on four grounds: (1) the trial court's instruction
concerning constructive possession was faulty and confused the
jury; (2) the pre-trial motion to suppress the physical evidence
should have been granted because Olba's Fourth Amendment rights
were violated; (3) the prosecution's theory at trial was
different from the theory presented before the Grand Jury; and
(4) the verdict was repugnant because the fact that the jury
acquitted Olba of the cocaine sale meant that the jury did not

-8-

believe that the prosecution proved beyond a reasonable doubt
that Olba was guilty of the possession charge.  (Resp't Ex. 8).

On November 1, 2006, the Supreme Court of New York,
Bronx County, denied the motion to vacate the judgment.  (Resp't
Ex. 10).  The first three claims were denied because Olba failed
to raise them on direct appeal and could not show cause for his
failure to do so.  (Resp't Ex. 10).  Where there are sufficient
facts for an appellant to raise a claim on direct appeal and the
appellant unjustifiably fails to do so, C.P.L. § 440.10(2)(c)
bars the appellant from raising the claim on collateral attack.
The fourth ground of Olba's motion to vacate the judgment was
denied under C.P.L. § 440.10(2)(a), as the claim had been
previously decided on the merits.  (Resp't Ex. 10).  On January
9, 2007, Olba's leave to appeal was denied by the Appellate
Division.  (Resp't Ex. 11).  On March 29, 2007, Olba's
application for leave to appeal was denied by the Court of
Appeals.  (Resp't Ex. 12).

### 3.   **Olba's Application for a Writ of Error Coram Nobis**

On June 22, 2007, Olba applied pro se for a writ of
error coram nobis, asserting the claims previously asserted in
his motion to vacate and adding a claim for ineffective
assistance of appellate counsel, in part, because counsel failed

-9-

to move to hold the appeal in abeyance and to renew Olba's motion

in the Supreme Court, Bronx County, for reconsideration of the

Wade issue.  (Resp't Ex. 13).  On April 17, 2008, the Appellate

Division summarily denied Olba's application.  (Resp't Ex. 15).

On June 8, 2008, Olba moved pro se, seeking leave to appeal to

the Court of Appeals from the order denying his coram nobis

application.  (Resp't Ex. 16).  On July 21, 2008, the Court of

Appeals denied Olba's leave application.  (Resp't Ex. 18).

#### 4.   The Habeas Petition

Olba filed this habeas petition pro se on August 13,

2008 claiming that (1) his appellate counsel was ineffective, (2)

the police violated his Fourth Amendment right to be free from

unreasonable searches and seizures when he was arrested without

probable cause, (3) the trial court gave erroneous jury

instructions on constructive possession and intent, and (4) there

was insufficient evidence to prove his guilt beyond a reasonable

doubt.

### DISCUSSION

### I.   Standard of Review

The Antiterrorism and Effective Death Penalty Act of

1996 ("AEDPA") provides that:

> An application for a writ of habeas corpus on
> behalf of a person in custody pursuant to the
> judgment of a State court shall not be granted
> with respect to any claim that was adjudicated

-10-

on the merits in State court proceedings
unless the adjudication of the claim—

(1) resulted in a decision that was contrary
to, or involved an unreasonable application
of, clearly established Federal law, as
determined by the Supreme Court of the United
States; or

(2) resulted in a decision that was based on
an unreasonable determination of the facts in
light of the evidence presented in the State
court proceedings.

28 U.S.C. § 2254(d)(1), (2).

The statute has been interpreted to require a
petitioner to show not only that clearly established federal law
was erroneously or incorrectly applied, but that the application
was unreasonable. See Williams, 529 U.S. at 411; see also
Lockyer v. Andrade, 538 U.S. 63, 75 (2003). As the Second
Circuit has explained: "A state court decision is 'contrary to'
Supreme Court precedent only if it either 'arrives at a
conclusion opposite to that reached by [the Supreme Court] on a
question of law' or 'confronts facts that are materially
indistinguishable from a relevant Supreme Court precedent and
arrives at [the opposite result].'" Lainfiesta v. Artuz, 253
F.3d 151, 155 (2d Cir. 2001) (quoting Williams, 529 U.S. at 405.
The standards set forth by AEDPA apply to all habeas petitions
filed after the statute's effective date of April 24, 1996. See
Boyette v. Lefevre, 246 F.3d 76, 88 (2d Cir. 2001) (citing
Williams, 529 U.S. at 402).

-11-

## II.  **Procedural Default**

Federal habeas review of a claim is generally prohibited if the state court rests its judgment on an independent and adequate state ground.  See Lambrix v. Singletary, 520 U.S. 518, 522-23 (1997); Coleman v. Thompson, 501 U.S. 722, 729 (1991); Jones v. Vacco, 126 F.3d 408, 414 (2d Cir. 1997).  Procedural default in state court qualifies as an independent and adequate state ground when "the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar."  Levine v. Comm'r of Corr. Servs., 44 F.3d 121, 126 (2d Cir. 1995) (citations and internal quotation omitted).  When the last "reasoned" opinion on a claim explicitly imposes the procedural bar, later unexplained orders upholding that opinion or rejecting that same claim are presumed to uphold the bar.  Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).  Accordingly, a habeas petitioner's forfeiture of his constitutional claims in state court bars him from litigating the merits of those claims in federal habeas proceedings, "absent a showing of cause for the procedural default and prejudice resulting therefrom."  Grey v. Hoke, 933 F.2d 117, 121 (2d Cir. 1991); see also Wainwright v. Sykes, 433 U.S. 72, 87-91 (1977).

-12-

## III. **Application**

Olba asserts four claims in this habeas petition.   I address each claim in turn, including whether the claim has been exhausted or procedurally defaulted.

### A.   **Ineffective Assistance of Counsel**

#### 1.   **Applicable Law**

To prevail on an ineffective assistance of counsel claim, petitioner must satisfy the two-prong test set forth in Strickland v. Washington, 466 U.S. 668 (1984).  First, the petitioner must demonstrate that his "counsel's representation fell below an objective standard of reasonableness."  Id. at 687-88.  Second, he must show that counsel's deficient performance prejudiced his defense.  Id. at 692.  To demonstrate that he was prejudiced, a petitioner must prove that, but for counsel's errors, there is a sufficient probability that the outcome of the proceeding would have been different.  Id. at 694.  To succeed, petitioner must overcome a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  See id. at 689.  Furthermore, judicial scrutiny of counsel's performance and trial strategy must be deferential, "evaluat[ing] the conduct from counsel's perspective at the time."  See id.

-13-

While the Strickland two-pronged test initially applied to trial counsel, it has been extended to appellate attorneys as well. Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994). To establish ineffective assistance of appellate counsel, it is not sufficient to demonstrate that counsel omitted a non-frivolous argument, because appellate counsel is not required to raise all possible arguments. Id. "[I]ndeed, the weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy." Miller v. Keeney, 882 F.2d 1428, 1434 (9th Cir. 1989) (citations omitted). Failure to raise an argument on appeal constitutes ineffective assistance only when the omitted issue is clearly stronger and more significant than those presented. See Mayo, 13 F.3d at 533 (citing Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986)).

To establish that a habeas petitioner was prejudiced by appellate counsel's failings under the second prong of the Strickland test, the petitioner must establish that there is a reasonable probability that the omitted "claim would have been successful before the [state's highest court]." See id. (quoting Claudio v. Scully, 982 F.2d 798, 803-05 (2d Cir. 1992)).

## 2.  **Application**

Olba claims his appellate counsel was ineffective because on direct appeal counsel failed to raise the claim that trial counsel was ineffective for not renewing the request for a

-14-

<u>Wade</u> hearing post-judgment.[6]   (Pet. 6; Pet. Reply 3-5).   Because
this claim fails both prongs of the <u>Strickland</u> test, the claim is
dismissed.

First, appellate counsel's performance did not fall
below the objective standard of reasonableness.   Trial counsel
was not ineffective for failing to renew the request for a <u>Wade</u>
hearing because Olba was procedurally barred from doing so under
C.P.L. § 710.40 (providing that renewal of pre-trial motions must
be made prior to judgment).   In its decision denying Olba's
request for a <u>Wade</u> hearing, the trial court held that defendant
was "granted leave to renew the motion should new or additional
facts indicate that the identification was not confirmatory."
(Resp't Ex. 4).   Olba has not identified any new or additional
facts that arose that would have supported a renewed motion, and
even if he did, counsel would still have been procedurally barred
from renewing the motion post-judgment.

Appellate counsel's performance also did not fall below
the objective standard of reasonableness for a second reason.   In
his brief, appellate counsel argued that Belle's drive-by

---

[6]     Because Olba does not clearly state why his appellate
counsel was ineffective, I have liberally construed his petition.
In addition, although respondent argues that Olba's ineffective
assistance of counsel claim is unexhausted, I find that Olba
exhausted his state court remedies regarding this claim when he
asserted it in his petition for a writ of error <u>coram</u> <u>nobis</u>.   <u>See</u>
<u>Hurd v. Kean</u>, No. 97 Civ. 2991 (SAS), 1997 WL 582825 at *1
(S.D.N.Y. Sept. 19, 1997).

-15-

identification of Olba was not sufficient to prove that Olba was
the Hispanic man who sold Belle the drugs.  (Resp't Ex. 5).  By
challenging the verdict, in part on the grounds that Belle's
identification of Olba was insufficient, appellate counsel gave
the Appellate Division an opportunity to evaluate whether Belle's
identification was sufficient to give Dohan probable cause to
arrest Olba.  Because a Wade hearing addresses the issue of
whether the pre-trial identification of a defendant is based on
sufficient and reliable facts to admit the identification into
trial, the claim was effectively addressed.  In fact, the
Appellate Division considered this issue when it stated that
Belle's identification of Olba was a "reliable identification."
People v. Olba, 24 A.D.3d 105, 105 (1st Dep't 2005).

          Second, even if this claim survived the first prong of
the Strickland test, it would fail the second prong because it is
clear that the claim would not have a reasonable probability of
succeeding in the state's highest court.  Indeed, this issue was
considered at least three times: in the suppression motion, at
the evidentiary hearing, and on direct appeal.  (Resp't Ex. 2, 5;
Hrg 51-52).  Each time the court ruled against Olba with a
written decision giving the reasons for the unfavorable ruling.
I do not disagree with any of these rulings as a matter of law
and I do not believe that the Court of Appeals would either.
Moreover, the jury clearly accepted the testimony of the

detectives and the identification of Olba.  There is, therefore,
no reasonable probability that the claim would be successful on
yet another try.  Accordingly, this claim is dismissed.

### B.    **Probable Cause for Arrest**

#### 1.    **Applicable Law**

While federal courts may review constitutional claims,
"where the State has provided an opportunity for full and fair
litigation of a Fourth Amendment claim, the Constitution does not
require that a state prisoner be granted federal habeas corpus
relief on the ground that evidence obtained in an
unconstitutional search or seizure was introduced at his trial."
Stone v. Powell, 428 U.S. 465, 494 (1976).  The Second Circuit
has established a litmus test to determine when a state prisoner
has been denied an opportunity for full and fair litigation of
his Fourth Amendment claims.  See Cappellan v. Riley, 975 F.2d 67
(2d Cir. 1992); Gates v. Henderson, 568 F.2d 830 (2d Cir. 1977).
Fourth Amendment claims may only be reviewed (1) if the state has
provided no corrective procedures to redress the alleged Fourth
Amendment claims; or (2) if the defendant was precluded from
using the corrective mechanism because of an unconscionable
breakdown in the underlying process.  See Gates, 568 F.2d at 840.

-17-

## 2.   **Application**

Olba claims his Fourth Amendment right to be free of unreasonable searches and seizures was violated when Dohan arrested him without probable cause and when Conrey searched the mailbox.  (Pet. 7; Pet. Reply. 7).  Because this basis for habeas relief is barred by Stone, this claim is denied.

Neither of the exceptions outlined in Stone applies here.  First, petitioner has had multiple full and fair opportunities to litigate his Fourth Amendment challenges by raising them in his suppression motion, at the evidentiary hearing, on direct appeal, and in his § 440 motion.  New York's statutory procedures for litigating Fourth Amendment search and seizure issues before trial have been expressly approved by courts in this circuit as "facially adequate."  Senor v. Senkowski, No. 97 Civ. 4929, 1999 U.S. Dist. Lexis 13617, at *25-26 (E.D.N.Y. Aug. 31, 1999) (citing cases); see also Capellan, 975 F.2d at 70 n.1.

Second, Olba has not alleged that an unconscionable breakdown in the process occurred, nor could he.  "To allege . . . a breakdown [in the process], petitioner must prove that no state court . . . conducted a reasoned method of inquiry into relevant questions of fact and law or any inquiry at all into the Fourth Amendment claim."  Senor, 1999 U.S. Dist. Lexis 13617, at

-18-

*26 (quoting Shaw v. Scully, 654 F. Supp. 859, 863-64 (S.D.N.Y. 1987)) (internal quotations omitted).  Clearly Olba's claim has been considered.  Thus, even if I were to disagree with the state court's numerous assessments of the Fourth Amendment issue, this court does not have the authority "to review the state record and grant the writ."  Gates, 568 F.2d at 840.  Accordingly, Olba's Fourth Amendment claim is precluded from federal habeas review and is dismissed.

### C.   The Jury Instructions

Olba claims he was deprived of Due Process when the trial court erroneously charged the jury on constructive possession and intent.  The claim is rejected for two reasons.

First, the claim is procedurally barred because Olba failed to raise it on direct appeal.  When Olba first raised this claim in his § 440 motion, the Supreme Court held that the claim was procedurally defaulted pursuant to C.P.L. § 440.10(2)(c) because sufficient facts appeared on the record for Olba to have brought the claim on direct appeal.  (Resp't Ex. 10).  The later, unexplained opinions by the Appellate Division and Court of Appeals are presumed to uphold the bar.  See Ylst, 501 U.S. at 803.  Olba may still bring this claim if he can show cause for the procedural default and prejudice resulting therefrom.  See Grey, 933 F.2d at 121.  Here, however, Olba has not claimed any

-19-

cause for his failure nor can he show that he is prejudiced, as discussed below.

Second, even assuming the issue is not procedurally barred, the claim is meritless.  The standard of review is "not whether the instruction is undesirable, erroneous or even universally condemned [but whether] the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."  <u>Wright v. Smith</u>, 569 F.2d 1188, 1191 (2d Cir. 1978) (quoting <u>Cupp v. Naughten</u>, 414 U.S. 141, 146-47 (1970)); <u>see also</u> <u>Blazic v. Henderson</u>, 900 F.2d 534, 541 (2d Cir. 1990).  No such infection existed here.  First, the jury instruction on constructive possession was properly included.  Under New York Penal Law § 10.00(8), "possess" means to have physical possession or otherwise to exercise dominion or control over tangible property.  The court instructed the jury that the exercise of dominion or control over tangible property was constructive possession.  Thus, the trial court's instruction was proper.

Second, the trial court's qualification of "intent" does not constitute a constitutional violation.  Although the trial court did not use approved language set forth in the Criminal Jury Instructions on "intent," a challenge that merely claims that the instruction does not conform to a pattern jury

-20-

instruction is insufficient for a federal habeas court to grant relief. See Perez v. Greiner, No. 01 Civ. 5522 (AKH), 2002 WL 31132872 at *7 (S.D.N.Y. Sept. 25, 2002) (citing Estelle v. McGuire, 502 U.S. 62, 71-72 (1991). The additional explanation of premeditation did not deprive Olba of a fundamental process of law and viewing the instructions as a whole, the trial court did not commit constitutional error. Accordingly, this claim is dismissed.

### D. Sufficiency of the Evidence

#### 1. Applicable Law

In evaluating a claim of insufficiency of evidence, a federal court must review the evidence in a light most favorable to the prosecution. Jackson v. Virginia, 443 U.S. 307, 319 (1979). A guilty verdict should be upheld if any "'rational trier of fact could have found the essential elements' of the charged crime 'beyond a reasonable doubt.'" United States v. Salmonese, 352 F.3d 608, 618 (2d Cir. 2003) (quoting Jackson, 443 U.S. at 319). In cases where the facts support conflicting inferences, the reviewing court must presume that the jury "resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Jackson, 443 U .S. at 326; see also United States v. Chacko, 169 F.3d 140, 148 (2d Cir. 1999).

-21-

### b.   **Application**

Olba claims that the evidence at trial was insufficient to support Belle's identification of him or his conviction. Because Olba has failed to demonstrate that the evidence was insufficient, I dismiss this claim.  "A person is guilty of criminal possession of a controlled substance in the third degree when he knowingly and unlawfully possesses a narcotic drug with intent to sell it."  New York Penal Law § 220.16(1).

There was sufficient evidence presented at trial for any reasonable fact-finder to convict Olba.  The prosecution presented testimony from three detectives who testified that Olba was the man dealing the cocaine that night, and a chemist who testified that the bags found in the mailbox, in fact, did contain cocaine: Belle testified Olba had sold him the cocaine; Dohan testified that he detained Olba and found a set of keys on him; Conrey testified that one of the keys that was found on Olba fit mailbox 41; and the mailbox contained the pre-recorded money and cocaine Olba had separated into little bags.  This evidence was certainly sufficient for any rational trier of fact to have concluded that Olba "knowingly and unlawfully possesse[d] a narcotic drug with intent to sell it."

Olba argues that the conflicting testimony about whether the suspect was wearing a black shirt or a black jacket and the lighting in the lobby shows that there was insufficient evidence as a matter of law to support his conviction.  Also,

-22-

Olba argues that Mendoza's testimony that the mailboxes were often broken shows that he could not have constructively possessed the drugs.  Olba's arguments are unavailing.  Where two reasonable inferences may be drawn from the facts, the court must defer to the jury's resolution.  See Gruttola v. Hammock, 639 F.2d 922, 928 (2d Cir. 1981) (rejecting insufficient evidence claim because jury was entitled to believe the state's witnesses despite inconsistencies in their testimony and the state's evidence).  The jury's resolution of the conflicts in the testimony was reasonable as it could have found the police officers' testimony credible and the conflicts insignificant.

Finally, the physical evidence corroborated the detectives' testimony.  Mailbox 41 was locked, and the key for it was found on Olba's keyring.  Moreover, drugs and money, including the pre-recorded buy money, were found inside the mailbox.

Olba has failed to meet his "heavy burden" that this petition should be granted on this ground.  See Chacko, 169 F.3d at 148.  Accordingly, this claim is dismissed.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is denied.  Because Olba has not made a substantial showing of the denial of a constitutional right, I decline to issue a certificate of appealability.  See 28 U.S.C. § 2253 (as amended by AEDPA).  I certify pursuant to 28 U.S.C. § 1915(a)(3)

-23-

that any appeal taken from this decision would not be taken in good faith.  The Clerk of the Court is directed to enter judgment accordingly and to close this case.

SO ORDERED.

Dated:    New York, New York
          July 28, 2009

DENNY CHIN
United States District Judge